**O**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DIANE SUSAN BRAUNSTEIN,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. SACV 16-01026-KES<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Diane Susan Braunstein ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for supplemental security income ("SSI"). For the reasons discussed below, the Court concludes that the ALJ did not provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's pain testimony.

## I.

## BACKGROUND

Plaintiff applied for SSI on September 12, 2013, alleging disability

commencing March 18, 2008.[1] Administrative Record ("AR") 169-77. An ALJ conducted a hearing on September 30, 2014, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 76-99.

On November 25, 2014, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 56-75. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and degenerative arthritis cervical spine with post anterior discectomy and fusion at cervical spine twice with residuals; impingement syndrome right shoulder; carpal tunnel syndrome right wrist with residuals and early degenerative arthritis right knee; and decreased visual acuity. AR 61.

Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand and walk with normal breaks for a total of six hours of an eight-hour day; she can sit with normal breaks for a total of six hours of an eight-hour day, but she will need to move about every 30 to 40 minutes to stretch for about one to three minutes; no overhead work bilaterally; occasional handling, fingering, and pushing/pulling occasionally with the right dominant hand and frequently with the left hand; no jobs that require an individual to look behind their back where moving their head to look behind their back is a requirement of the job; postural limitations are all occasional except no climbing ladders, ropes, or scaffolds; and no jobs that require driving a vehicle as part of the job. AR 62.

In formulating Plaintiff's RFC, ALJ primarily considered medical evidence

---

[1] However, earnings records indicate that Plaintiff continued to work through 2013. AR 61, 181-93. In his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 10, 2013, her application date. AR 61.

1    after July 2013, Plaintiff's application date, and the June 2014 opinion of

2    independent consultative examiner, H. Harlan Bleecker, M.D. See AR 63, 65-68.

3         Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ

4    found that Plaintiff could not return to her past relevant work, but that she could

5    perform work as an information clerk or usher. AR 69-70. Therefore, the ALJ

6    concluded that Plaintiff is not disabled. Id.

## II.

## STANDARD OF REVIEW

9         Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

10   decision to deny benefits. The ALJ's findings and decision should be upheld if they

11   are free from legal error and are supported by substantial evidence based on the

12   record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401

13   (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence

14   means such relevant evidence as a reasonable person might accept as adequate to

15   support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d

16   1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a

17   preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin.,

18   466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence

19   supports a finding, the reviewing court "must review the administrative record as a

20   whole, weighing both the evidence that supports and the evidence that detracts from

21   the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

22   1998). "If the evidence can reasonably support either affirming or reversing," the

23   reviewing court "may not substitute its judgment" for that of the Commissioner. Id.

24   at 720-21.

25        "A decision of the ALJ will not be reversed for errors that are harmless."

26   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is

27   harmless if it either "occurred during a procedure or step the ALJ was not required

28   to perform," or if it "was inconsequential to the ultimate nondisability

1    determination." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th
2    Cir. 2006).

3    **A.     The Evaluation of Disability.**

4           A person is "disabled" for purposes of receiving Social Security benefits if he
5    or she is unable to engage in any substantial gainful activity owing to a physical or
6    mental impairment that is expected to result in death or which has lasted, or is
7    expected to last, for a continuous period of at least 12 months. 42 U.S.C.
8    § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A
9    claimant for disability benefits bears the burden of producing evidence to
10   demonstrate that he or she was disabled within the relevant time period. Johnson v.
11   Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

12   **B.     The Five-Step Evaluation Process.**

13          The ALJ follows a five-step sequential evaluation process in assessing
14   whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester
15   v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner
16   must determine whether the claimant is currently engaged in substantial gainful
17   activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R.
18   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

19          If the claimant is not engaged in substantial gainful activity, the second step
20   requires the Commissioner to determine whether the claimant has a "severe"
21   impairment or combination of impairments significantly limiting his ability to do
22   basic work activities; if not, a finding of not disabled is made and the claim must be
23   denied. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

24          If the claimant has a "severe" impairment or combination of impairments, the
25   third step requires the Commissioner to determine whether the impairment or
26   combination of impairments meets or equals an impairment in the Listing of
27   Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if
28   so, disability is conclusively presumed and benefits are awarded. Id.

1   §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

2        If the claimant's impairment or combination of impairments does not meet or

3   equal an impairment in the Listing, the fourth step requires the Commissioner to

4   determine whether the claimant has sufficient RFC to perform his past work; if so,

5   the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(iv),

6   416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform

7   past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a

8   prima facie case of disability is established. Id.

9        If that happens or if the claimant has no past relevant work, the

10  Commissioner then bears the burden of establishing that the claimant is not

11  disabled because he can perform other substantial gainful work available in the

12  national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That

13  determination comprises the fifth and final step in the sequential analysis. Id.

14  §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n. 5; Drouin, 966 F.2d at 1257.

15  **C.    Consideration of New Evidence Before Appeals Council.**

16       "The Commissioner's regulations permit claimants to submit new and

17  material evidence to the Appeals Council and require the Council to consider that

18  evidence in determining whether to review the ALJ's decision, as long as the

19  evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r

20  of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Medical evidence

21  created after the ALJ's decision date that reports on the same conditions a claimant

22  alleges as the bases of her disability may be deemed to relate to the period before

23  the ALJ's decision. See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228,

24  1233 (psychiatric evaluation and medical source statement dated after ALJ's

25  decision concerned assessment of claimant's health since his alleged onset date, and

26  therefore were related to the period before the ALJ's decision); Martinez v. Colvin,

27  2014 WL 4678992, at *4 (C.D. Cal. Sept. 19, 2014) (MRIs taken a week after the

28  ALJ's decision related to the bases for plaintiff's alleged disability and therefore

1    were related to the period before the ALJ's decision).

2          District courts "do not have jurisdiction to review a decision of the Appeals

3    Council denying a request for review of an ALJ's decision, because the Appeals

4    Council decision is a non-final agency action." Id. However, "when the Appeals

5    Council considers new evidence in deciding whether to review a decision of the

6    ALJ, that evidence becomes part of the administrative record." Id. at 1163. The

7    district court must review the record as a whole, including the evidence considered

8    by the Appeals Council, to determine whether the ALJ's decision was supported by

9    substantial evidence. See Id.; Warner v. Astrue, 859 F. Supp. 2d 1107, 1115 (C.D.

10   Cal. 2012); Palomares v. Astrue, 87 F. Supp. 2d 906, 916 (N.D. Cal. 2012).

11                                     **III.**

12                          **ISSUE PRESENTED**

13         Whether the ALJ adequately considered Plaintiff's pain and symptom

14   testimony. Joint Stipulation ("JS") at 4.

15                                     **IV.**

16                              **DISCUSSION**

17   **D.    The ALJ Failed to Provide Clear and Convincing Reasons for**

18         **Discounting Plaintiff's Testimony.**

19         **1.    Applicable Law.**

20         An ALJ's assessment of symptom severity and claimant credibility is entitled

21   to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989);

22   Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to

23   believe every allegation of disabling pain, or else disability benefits would be

24   available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

25   Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks

26   omitted).

27         In evaluating a claimant's subjective symptom testimony, the ALJ engages in

28   a two-step analysis. Lingerfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

1  "First, the ALJ must determine whether the claimant has presented objective

2  medical evidence of an underlying impairment [that] could reasonably be expected

3  to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not

4  reject claimant's testimony "simply because there is no showing that the

5  impairment can reasonably produce the degree of symptom alleged." Smolen v.

6  Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

7        Second, if the claimant meets the first test, the ALJ may discredit the

8  claimant's subjective symptom testimony only if he makes specific findings that

9  support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).

10  Absent a finding or affirmative evidence of malingering, the ALJ must provide

11  "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81

12  F.3d at 834; Ghanim, 763 F.3d at 1163 & n.9. The ALJ must consider a claimant's

13  work record, observations of medical providers and third parties with knowledge of

14  claimant's limitations, aggravating factors, functional restrictions caused by

15  symptoms, effects of medication, and the claimant's daily activities. Smolen, 80

16  F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole

17  basis for discounting pain testimony, it is a factor that the ALJ can consider in his

18  credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

19        The ALJ may also use ordinary techniques of credibility evaluation, such as

20  considering the claimant's reputation for lying and inconsistencies in his statements

21  or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278

22  F.3d at 958-59.[2]

23  _____

24        [2] The Social Security Administration ("SSA") recently published SSR 16-3p,
2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of

25  Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility"
from SSA policy, as the SSA's regulations do not use this term, and clarifies that

26  subjective symptom evaluation is not an examination of a claimant's character.

27  Murphy v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D.
Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, over one year

28  (Cont.)

1          **2.      Plaintiff's Testimony.**

2          At the September 30, 2014 hearing, Plaintiff testified that her pain level on

3    good days is a four out of ten, while on bad days her pain is a seven. AR 81, 91.

4    She testified that she has consistent pain in her right shoulder, arm, and wrist, and

5    the right side of her back. AR 81-82. She commented that her pain was less

6    substantial than usual because she recently received steroid injections. AR 82.

7    Plaintiff suffers from daily neck spasms that are generally worse in the evenings,

8    and they make it difficult to breathe and swallow. Id. She testified that the surgery

9    she received on her right shoulder in 2013 made her shoulder pain worse, and that

10   the range of motion in her right shoulder is about the same as it was before the

11   surgery. Id. She has recently started experiencing pain in her right knee. AR 83. She

12   claimed that she never received physical therapy after her first cervical discectomy

13   in 2010, and that her back pain returned approximately one year after the surgery.

14   AR 84-85. She has numbness in her right thumb, index, and middle fingers. AR 85.

15         Plaintiff testified that she can lift her right arm over her head but cannot bring

16   it behind her back. AR 85. She testified that she has started using plastic cups and

17   plates because she is always dropping them, and that it can be difficult to hold a

18   toothbrush. Id. Plaintiff does not clean, do laundry, care for her pets, or go grocery

19   shopping because of her limitations. AR 85, 89, 92. She can hold her fork to eat and

20   stir things, but otherwise cannot cook. AR 85-86. She testified that her doctor told

21   her not to drive because she has vision problems and cannot turn her head. AR 89,

22   91. She depends on her daughters and son to complete household tasks. AR 92.

23   While at home, she is able to sit for approximately two hours before pain forces her

24   to walk around for fifteen to twenty minutes. AR 87. Plaintiff's back and neck hurts

25   when she walks for extended periods of time. AR 88. She testified that the constant

26   ───────────────────────

27   after the ALJ issued his decision on November 25, 2014, and therefore is not
     applicable to the ALJ's decision in this case. Id.

28

1    pain she experiences in her back, neck, and shoulder keep her from working. AR

2    90. Plaintiff testified that her current doctor, Paul Choi, M.D., told her that she

3    needs further neck surgery. AR 90.

4          **3.     The ALJ's Treatment of Plaintiff's Credibility.**

5          The ALJ found that Plaintiff's "medically determinable impairments could

6    reasonably be expected to cause some of the alleged symptoms; however,

7    [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of

8    these symptoms are not entirely credible …." AR 63. The ALJ's primary reason for

9    discounting Plaintiff's pain testimony was that "the medical record shows very little

10   treatment following any of the 2013 surgeries and reports that she has improved

11   following each of the surgeries, suggesting that surgeries have resolved the issues."

12   AR 64. The ALJ also noted that (1) the medical evidence record as a whole

13   undermines her allegations, including the severity of her impairments and their

14   disabling effects; and (2) the medical opinion evidence of consultative examiner H.

15   Harlan Bleecker undermines Plaintiff's allegations. Id.

16         The ALJ summarized the relevant medical evidence as follows:

17       • July 2010: Plaintiff underwent cervical decompression and fusion, C5-6

18           and C6-7. Id., citing AR 308, 406, 415, 419, 583.[3]

19       • February 2013: Plaintiff underwent cervical spine surgery, C6-7 fusion,

20           on February 2, 2013. Id., citing AR 440-41, 566, 583. On February 20,

21           2013 Plaintiff's surgeon, Dr. Aflatoon, reported that "most of [Plaintiff's]

22           neck and arm pain has resolved." Id., citing AR 515.

23       • March 2013: Dr. Aflatoon reports after an evaluation of Plaintiff that

24           "[s]he has been improving slowly and has less pain than before surgery.

25   _____

26         [3] The ALJ also summarized additional medical evidence from 2008-2010.
     Because the ALJ's primary reason for discounting Plaintiff's testimony relies on

27   evidence from 2013 and 2014, the Court limits its discussion to that evidence.

28

9

She is taking less pain medication now. I have encouraged her to become more active." Id., citing AR 516.

- April 2013: Dr. Aflatoon reports after further evaluation that "[Plaintiff] has been improving in her neck pain. She has moderate pain in her right shoulder. She has limited activities due to pain." Id., citing AR 517.

- June 2013: An examination with Dr. Aflatoon shows normal gait, positive Spurling's[4] test and decreased range of motion of the cervical spine, as well as slightly decreased range of motion of the right shoulder with a positive Hawkins sign.[5] Motor strength in the upper extremities is 5/5. Deep tendon reflexes in the upper extremities are normal. Babinski[6] and Hoffman's[7] tests are negative, but she is sensitive to light touch at C3, 4, 5, 6, 7, 8 and T1. An MRI shows mild hypertrophic changes in the acromioclavicular joint, the joint capsule is normal, rotator cuff is negative, and glenohumeral joint, labrum, and biceps tendons are normal.

---

[4] This test is used to assess pain caused by nerve root compression, also called radiculopathy. See https://en.wikipedia.org/wiki/Spurling's_test.

[5] The Hawkins test is used to evaluate shoulder injuries. "A positive Hawkins test is indicative of an impingement of all structures that are located between the … humerus and the coracohumeral ligament. See https://en.Wikipedia.org/wiki/Hawkins%E2%80%93Kennedy_test.

[6] A Babinski response is a negative response to stimulation of the plantar reflex. The plantar reflex is elicited when the sole of the foot is stimulated with a blunt instrument. An upward response of the hallux (big toe) is known as the Babinski response. A Babinski response can indicate upper motor neuron lesion constituting damage to the corticospinal tract. See https://en.wikipedia.org/wiki/Plantar_reflex.

[7] The Hoffman's response is the upper limb equivalent of the Babinski response. A Hoffman's response is a finding elicited by a reflex test in one's finger flexor, which verifies the presence or absence of problems in the corticospinal tract. See https://en.wikipedia.org/wiki/Hoffmann%27s_reflex.

AR 66, citing AR438-39. Dr. Aflatoon recommends a right shoulder arthroscopy. AR 65-66, citing AR 519, 522.

- July 2013: Plaintiff has a right shoulder arthroscopy, bursectomy, acromioplasty, and synovectomy. AR 66, citing AR 436, 566, 583.

- August 2013: Dr. Aflatoon reports that Plaintiff's pain has improved in the right shoulder. Id., citing AR 523. Physical therapy reports note that Plaintiff is "doing very well in terms of pain and restoration of function," but she drops things due to her carpal tunnel syndrome. However, grip strength is 41 pounds of force with the right hand and 61 with the left. Id., citing AR 547-48.

- December 2013: Examination of Plaintiff reveals normal gait and decreased range of motion of the cervical spine. However, Spurling's and Adson's[8] tests are both negative. Range of motion of the upper extremities is within normal limits, except a slight decrease in the right shoulder. Plaintiff complained of increasing pain toward the terminal range of motion. A Hawkins sign on the right shoulder was positive, and a Tinel's[9] sign and a Phalen's[10] sign were positive in the right hand. Motor strength in the upper extremities is 5/5 throughout and deep tendon reflexes are 2.

---

[8] A positive Adson's sign is the loss of the radial pulse in the arm by rotating the head to the ipsilateral side with an extended neck following deep inspiration. See https://en.wikipedia.org/wiki/Adson's_sign.

[9] A Tinel's test is a way to detect irritated nerves. It is performed by lightly tapping over the nerve to elicit a sensation of tingling or "pins and needles" in the distribution of the nerve. See https://en.wikipedia.org/wiki/Tinel%27s_sign

[10] For this test, the patient holds their wrist in complete and forced flexion (pushing the dorsal surfaces of both hands together) for 30–60 seconds. By compressing the median nerve, characteristic symptoms (such as burning, tingling or numb sensation over the fingers) conveys a positive test result. See https://en.wikipedia.org/wiki/Phalen_maneuver.

Cranial nerves II-XII are intact, and a Romberg test[11] is negative. Id., citing AR 592-95. An x-ray of the cervical spine indicates Plaintiff is status post cervical fusion from C5 through C7: otherwise the findings are normal and there is no acute pathology. Id., citing 581. An x-ray of the right shoulder is unremarkable. Id., citing AR 582. On December 12, 2013, Plaintiff underwent right carpal tunnel release surgery. Id., citing AR 566.

- March 2014: Plaintiff's eye exam reports that her visual acuity Snellen chart is 20/40 in each eye, and pinhole is 20/25. Id., citing AR 574.
- September 2014: Plaintiff visited a doctor for dysphagia (difficulty swallowing), "but little else is noted about her other conditions such as CTS, cervical disc displacement and radiculopathy and stenosis, myalgia, neck pain, and rotator cuff syndrome except that they are current health issues." AR 66-67, citing AR 608-11.

After summarizing the evidence, the ALJ determined that "there is very little treatment following any of the 2013 surgeries and reports that she has improved following each of the surgeries, suggesting the surgeries resolved the issues." AR 67.

The ALJ also found that the medical opinion evidence of examining physician Dr. Bleecker "undermines the credibility of Plaintiff's allegations, including the severity of her impairments and their limiting effects." AR 64. Dr. Bleecker examined Plaintiff in June 2014. AR 67.

The ALJ determined that Dr. Bleecker's exam "revealed many exam findings that were normal." AR 67. As relevant here, Dr. Bleecker found that Plaintiff sits

---

[11] This tests neurological function. The standing patient is asked to close his or her eyes. A loss of balance is interpreted as a positive Romberg's test. See https://en.wikipedia.org/wiki/Romberg%27s_test.

and stands with normal posture, with no evidence of tilt or list. AR 553. Range of motion in the neck is as follows: forward flexion is chin one inch to sternum/50 degrees, extension is 30/60 bending to right and left is 20/45 rotation from right and left is 45/80. AR 554. Range of motion in the back is as follows: forward flexion is 80/90, backward extension is 20/25, and bending to right and left is 20/25. Id. Range of motion in the upper extremities (shoulders, elbow, wrists, fingers) is within normal limits except a positive impingement on the right shoulder at 90 degrees. Id. Range of motion of the lower extremities (hips, knees, ankles) is within normal limits except medial joint line tenderness on the right knee, but McMurray's[12] and Lachman's[13] tests are both negative. Id. Motor strength was within normal limits. AR 555. Sensation was intact in the upper extremities except there is residual hypalgesia (decreased sensitivity) in the thumb, index, and middle fingers on the right when compared to the left. Id. However, Phalen's and Tinel's tests were negative. Id. Grip strength with the Jamar Handgrip Dynamometer was 40/35/40 with the right hand and 45/40/40 with the left. Id. Reflexes were normal. Id.

The ALJ gave Dr. Bleecker's opinion significant weight in part because "his opinion is consistent with his exam findings and the medical evidence record as a whole, which shows there is very little treatment following any of the 2013 surgeries … suggesting that surgeries resolved the issues." AR 68.

---

[12] The McMurray test evaluates for the presence of a meniscal tear. A negative test indicates there is no evidence of tear. See http://stanfordmedicine25.stanford.edu/the25/knee.html.

[13] The Lachman test checks for any tearing of the anterior cruciate ligament ("ACL"). A negative exam indicates no tearing of the ACL. See http://orthosurg.ucsf.edu/patient-care/divisions/sports-medicine/conditions/knee/anterior-cruciate-ligament-injury-acl.

1

**4.     New Medical Evidence.**

2

            a.     The Appeals Council Decision to Deny Review.

3      On February 25, 2015, Plaintiff submitted additional medical records from

4 Healthcare Partners, covering treatment received by Plaintiff from September 4,

5 2014 to February 9, 2015. AR 612. On April 5, 2015, the Appeals Council noted

6 that it had received the evidence, "which it [made] a part of the record." AR 6.[14] On

7 the same date, the Appeals Council denied Plaintiff's request for review of the

8 ALJ's decision. AR 1. In its decision, the Appeals Council "considered whether the

9 [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence

10 currently of record" and found that "this information does not provide a basis for

11 changing the [ALJ]'s decision." AR 2.

12     The Appeals Council went on to note that they "looked" at a second set of

13 records Plaintiff submitted from Healthcare Partners Medical Group "dated

14 February 26, 2015 through December 14, 2015" and determined that, because the

15 ALJ decided Plaintiff's case through November 25, 2014, that evidence "does not

16 affect the decision about whether [Plaintiff was] disabled" through that date. Id.

17 The Appeals Council did not incorporate this evidence into the record. It therefore

18 appears that the Appeals Council determined that the second set of evidence was

19 immaterial to the question of Plaintiff's disability, and did not consider it. See

20 Brewes, 682 F.3d at 1162. Neither party contests the Appeals Council's decision to

21 reject this second set of records, and they both limit the support for their

22 contentions to the evidence specifically incorporated into the record.

23     "When the Appeals Council considers new evidence in deciding whether to

24 review a decision of the ALJ, that evidence becomes part of the administrative

25 record, which the district court must consider when reviewing the Commission's

26

_____

27           [14] These records are now at AR 612-710.

28

14

1   final decision for substantial evidence." <u>Brewes</u>, 682 F.3d at 1162. The Court,

2   therefore, only considers the evidence that the Appeals Council specifically

3   incorporated into the record, i.e., the evidence from September 22, 2014 to January

4   29, 2015.

5           b.      New Medical Evidence Presented to the Appeals Council.

6           Plaintiff contends that the ALJ's finding of "little treatment" following her

7   2013 surgeries is belied by the medical record as currently constituted. JS at 9. She

8   argues that "the record demonstrates continued aggressive treatment after four

9   separate surgeries, three of which were in 2013." JS at 11. Plaintiff points to the

10  following eight medical records to support her claim:

11          <u>Evidence the ALJ had, but did not discuss:</u>

12  • July 31, 2014: Plaintiff presented to Dr. Choi, her pain management

13      specialist, for worsening pain in the neck and right upper extremity with

14      limited relief from her current medication regime. AR 567. A physical

15      examination revealed diffuse tenderness of the cervical paravertebral

16      musculature, +TTP over the right trapezius and levator scapula, and

17      decreased range of motion of the cervical spine. AR 568. All other exam

18      results were normal. <u>Id.</u> Dr. Choi adjusted Plaintiff's medication and

19      future injections were recommended as needed. AR 569. Records of this

20      examination were included in the record that the ALJ reviewed, but he did

21      not mention them in his decision.

22          <u>New Evidence Submitted to the Appeals Council:</u>

23  • September 22, 2014: Plaintiff returned to Dr. Choi for neck and upper

24      extremity pain. AR 685. She also complained of right knee pain. <u>Id.</u>

25      Examination of the right knee revealed tenderness and limited range of

26      motion. Examination of the cervical spine revealed the same results as her

27      July 2014 visit. <u>See</u> AR 686. The assessment was as follows: (1) cervical

28      disc displacement; (2) C5-C6, C6-C7 herniated discs with stenosis and

radiculopathy; (3) pre-op clearance for C6-7 anterior cervical decompression and fusion with cage, bone graft, and instrumentation surgery July 2, 2010; (4) February 2013 fusion C6-7; (5) cervical radiculopathy; (6) Brachial neuritis, nos; (7) failed back syndrome, cervical; and (8) myalgia and myositis. AR 687. Dr. Choi administered trigger-point injections. Id. He also continued medication management, ordered an injection for the right knee, and recommended cervical epidural steroid injections in the future as needed. Id.

- October 23, 2014: Plaintiff returned to Dr. Choi, reporting increased neck pain and spasms, and was status post endoscopy procedure the prior week due to neck spasms. AR 668. The examination and assessment were essentially unchanged. Id. Dr. Choi prescribed opioids and scheduled a trigger-point injection on the next visit. AR 670.

- October 31, 2014: Plaintiff attended an appointment with Dr. Salem, a family medicine and internal medicine specialist, regarding her right knee pain. AR 638. Physical examination of the right knee revealed crepitus, but an otherwise stable knee and no effusion. AR 639. An x-ray of the right knee was ordered. See AR 659. It is noted that Plaintiff was previously diagnosed with severe gastroesophageal reflux disease ("GERD"). Id.

- November 11, 2014: Plaintiff attended a follow-up appointment with Dr. Aflatoon. AR 664. Dr. Aflatoon reported that Plaintiff was improving very well, that she does not have the same pain as she used to have in the past, and that she is currently performing home exercises. AR 667. Physical examination revealed limited range of motion of the cervical spine, negative Spurling's and Adson's tests, 5/5 motor strength, and negative Babinski and Hoffman tests. Id.

- November 21, 2014: Plaintiff reported persistent pain in her neck, right

upper extremity, and right knee. AR 659. Her examination remained the same as her July 2014 visit. AR 660. Review of an x-ray of Plaintiff's right knee was normal. AR 661. Dr. Choi administered trigger-point injections in the right trapezius and levator scapula. Id. The treatment plan consisted of continued pain management. AR 662. The report notes that with her current medication regimen, she reports improved function and improved pain interference. AR 659.

Evidence After the ALJ's Decision:[15]

- December 8, 2014: An examination of Plaintiff's right knee revealed patellofemoral pain, patellofemoral grinding, crepitus, and positive medial joint line pain. Range of motion was 5 to 105 degrees. Plaintiff received an injection of lidocaine in her right knee. AR 613.

- December 19, 2014: Plaintiff attended a follow-up appointment with Drs. Choi and Editha Tanig-Sanjongco. AR 652. She reported increased neck/throat spasms and persistent neck, right upper extremity, and right knee pain. Id. Her physical examination remained the same as her July 2014 visit. AR 653-54. The examination report noted that while Plaintiff reports high pain scores, her current medication regimen allows her to be functional. AR 654. Plaintiff has a "fair" response to pain medication therapy, but that response is limited due to "severe pain flares." Id. Dr. Choi adjusted her medication, introducing a trial dose of Valium for muscle spasms. Id.

---

[15] Because the Appeals Council accepted this medical evidence from December 2014 to January 2015, the Court will assume that it found the evidence material as it relates to the same conditions discussed by the ALJ.

1    **5.    Analysis.**

2              a.      The 2014 medical evidence does not support the ALJ's finding

3                      of "little treatment" following Plaintiff's 2013 surgeries.

4         In light of the additional evidence showing Plaintiff's regular pain treatment

5    following her surgeries, the ALJ's determination that Plaintiff had "little treatment"

6    after her 2013 surgeries, suggesting that the surgeries had resolved her issues, is not

7    supported by substantial evidence. Rather, the new records summarized above show

8    that while Plaintiff's surgeries provided some relief, Plaintiff complained of

9    persistent and chronic pain at various times in 2014.

10        The Commissioner characterizes the ALJ's statement that the record showed

11   "little treatment" following Plaintiff's surgeries as synonymous with finding that

12   Plaintiff only received "routine and conservative treatment" following her

13   surgeries, presumably in the attempt to argue that the new treatment evidence

14   presented to the Appeals Council did not contradict the ALJ's reasons for

15   discounting Plaintiff's pain testimony. See JS at 15. The ALJ, however, did not

16   base his adverse credibility determination on the "routine and conservative" nature

17   of the Plaintiff's treatment post-surgery. Rather, the ALJ summarized evidence

18   from 2013 and early 2014 and concluded that Plaintiff received little treatment of

19   any kind. Because the ALJ did not have access to the treatment records from

20   September to December 2014, he did not have the opportunity to determine whether

21   the treatment she received post-surgery (primarily pain medication adjustment and

22   multiple steroid injections) was routine and conservative. The Court will not

23   substitute the Commissioner's post-hoc explanations discounting the new evidence

24   for the reasons actually given in the ALJ's opinion. See Bray v. Comm'r of Soc.

25   Sec. Admin., 554 F.3d 1219, 1225-26 (2009).

26        To the extent that the Commissioner is arguing that any error in the ALJ's

27   decision is harmless because the new evidence considered by the Appeals Council

28   only shows "routine and conservative treatment" that does not support Plaintiff's

1   pain testimony, the Court disagrees. Courts have found that treatment consisting of

2   *only* pain medication and infrequent steroid injections may be considered routine

3   and conservative. See Garza v. Colvin, 2016 WL 7391507, at *12 (C.D. Cal. Dec.

4   21, 2016) (collecting cases in which treatment consisting of pain medication,

5   injections, and physical therapy alone constitutes conservative treatment). Here,

6   however, Plaintiff resorted to injections and medication after multiple surgeries did

7   not resolve her pain. The Court does not consider Plaintiff's 2013 treatment history

8   "routine and conservative." See Sanchez v. Colvin , 2013 WL 1319667, at *4 (C.D.

9   Cal. Mar. 29, 2013) ("Surgery is not conservative treatment."); Kirk v. Colvin ,

10  2015 WL 1499078, at *10 n.5 (E.D. Cal. Mar. 31, 2015) (rejecting finding that

11  "injections and surgery constitute 'conservative treatment'"); Hydat Yang v.

12  Colvin, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (collecting cases holding

13  that epidural injections are not conservative treatment); Christie v. Astrue, 2011

14  WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize injections,

15  epidurals, and narcotic pain medication as "conservative").

16        Therefore, in light of the new evidence presented to the Appeals Council, the

17  ALJ's decision to discount Plaintiff's credibility due to lack of post-surgery

18  treatment is not supported by substantial evidence.

19              b.    Substantial evidence does not support the ALJ's findings that

20                    the medical record and Dr. Bleecker's opinion evidence

21                    undermine Plaintiff's allegations.

22        The ALJ also determined that the objective medical evidence "undermines"

23  Plaintiff's allegations of disabling pain. AR 64. The only concrete explanation the

24  ALJ gave to support this contention was that Plaintiff received "very little

25  treatment" following her 2013 surgeries. Id. As discussed above, due to the new

26  evidence Plaintiff submitted to the Appeals Council, that finding is not supported

27  by substantial evidence. Otherwise, the ALJ merely recites the medical record to

28  support his contention, without identifying how the medical evidence undermines

1   Plaintiff's testimony. <u>See</u> AR 64-67. The recitation of the medical record is not a

2   specific, clear, and convincing reason to discount Plaintiff's pain testimony. <u>See</u>

3   <u>Brown-Hunter v. Colvin</u>, 798 F.3d 749, 757 (9th Cir. 2015), citing <u>Treichler v.</u>

4   <u>Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014).

5        Further, when the medical record, including the additional 2014 evidence, is

6   reviewed as a whole, it does not necessarily undermine Plaintiff's allegations

7   regarding the severity of her pain. Plaintiff consistently presented with persistent,

8   severe pain and neck spasms following her surgeries, and was treated for that pain

9   through repeated steroid injections and prescription pain medication. <u>See</u> Section

10   IV.A.4, <u>supra</u>.

11        The ALJ's determination that Dr. Bleecker's opinion evidence undermines

12   Plaintiff's allegations of disabling pain suffers the same fate. The ALJ credited Dr.

13   Bleecker's opinion in part because it was consistent with the ALJ's finding that

14   there was little treatment following Plaintiff's 2013 surgeries. AR 67. With the

15   benefit of additional 2014 evidence, the Court cannot determine whether Dr.

16   Bleecker's opinion would still be accorded the weight it was given, nor whether his

17   opinion remains a clear and convincing reason to discount Plaintiff's allegations of

18   disabling pain.

19           c.    The ALJ did not discount Plaintiff's testimony due to

20                  inconsistent statements regarding her alleged onset date or

21                  substantial gainful activity ("SGA").

22        The Commissioner argues that the ALJ rejected Plaintiff's testimony because

23   he vaguely discussed inconsistencies in Plaintiff's reporting of her alleged onset

24   date and when she stopped working. The Commissioner refers to Plaintiff's report

25   that her disability began on March 18, 2008, yet earnings records indicated that she

26   continued to work through 2013. JS at 19, citing AR 162, 181-93. In the ALJ's

27   determination that Plaintiff did not engage in substantial gainful activity since her

28   application date of July 21, 2013, the ALJ noted that "Plaintiff's earnings are close

1    to SGA" but deemed them "not SGA to develop the record." AR 61. The

2    Commissioner contends that "given this evidence, the ALJ properly questioned the

3    veracity of Plaintiff's subjective statements." JS at 19.

4            Fatal to the Commissioner's position, nowhere in his opinion did the ALJ

5    specifically link Plaintiff's allegedly inconsistent testimony regarding her disability

6    onset date to a conclusion that Plaintiff's pain testimony lacked credibility. See

7    Gonzales v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding legal error when

8    ALJ vaguely mentioned apparent inconsistencies in plaintiff's daily activities but

9    did not explicitly find that those inconsistencies were relied upon to discount

10   Plaintiff's excess pain testimony). A district court may not affirm an ALJ's decision

11   for a reason not discussed by the ALJ, even if supported by the record. See Connett

12   v. Barnhart, 340 F.3d 871, 874 (2003).

13   **E.      Remand for Further Proceedings is Appropriate.**

14           When an ALJ errs in denying benefits, the Court generally has discretion to

15   remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th

16   Cir. 2000) (as amended). When no useful purpose would be served by further

17   proceedings, however, or when the record has been fully developed, it is

18   appropriate under the "credit-as-true" rule to direct an immediate award of benefits.

19   See id. at 1179 (noting that "the decision of whether to remand for further

20   proceedings turns upon the likely utility of such proceedings"); Garrison v. Colvin,

21   759 F.3d 995, 1019-20 (9th Cir. 2014); Treichler v. Comm'r of Soc. Sec. Admin.,

22   775 F.3d 1090, 1100-01 (9th Cir. 2014). Here, remand for further proceedings is

23   appropriate because the ALJ did not provide clear and convincing reasons for

24   discounting Plaintiff's testimony, yet the record also contains evidence suggesting

25   that, with proper pain management, her functioning could permit her to work. On

26   remand, the ALJ will need to reassess the medical evidence, Plaintiff's pain

27   testimony, and Plaintiff's RFC in light of Plaintiff's new treatment records, and

28   possibly seek the additional testimony of a vocational expert.

1

**IV.**

2

**CONCLUSION**

3      For the reasons stated above, the decision of the Social Security

4   Commissioner is REVERSED and the matter is REMANDED for further

5   proceedings consistent with this opinion.

6      LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8   DATED: <u>March 8, 2017</u>

9

10   _____

11   KAREN E. SCOTT
     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28